IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT H.,[1]

        Plaintiff,                                Civ. No. 3:22-cv-439-MC

    v.                                        OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.
_____

MCSHANE, Judge:

        Plaintiff brings this action for judicial review of the Commissioner's decision denying his application for disability insurance and supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

        On May 9, 2019, Plaintiff filed an application for benefits, alleging disability as of January 3, 2019. Tr. 17, 233.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 17. Plaintiff argues the ALJ erred by discounting Plaintiff's subjective symptom testimony, by finding the opinions of Plaintiff's

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

psychiatrist, Dr. Edmond Whiteley, unpersuasive, and by rejecting lay witness testimony from Plaintiff's wife. Because the ALJ erred, and because the record is fully developed and requires a finding that Plaintiff is disabled, the Commissioner's decision is REVERSED and REMANDED for calculation of benefits.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an

adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: generalized anxiety disorder, a major depressive disorder, and obesity. Tr. 20. The ALJ concluded Plaintiff had the RFC to a full range of work, but was limited to simple, routine instructions and tasks; could have only occasional changes in a routine work setting; and could have occasional interaction with co-workers or supervisors, but no interaction with the public. Tr. 23. At step four, the ALJ found Plaintiff capable of performing past relevant work as a Stores Laborer (DOT 372.667-034), semiskilled (SVP 3) light exertional work capacity. Tr. 26. At step five, the ALJ made the alternate finding that Plaintiff could perform other work that exists in substantial numbers in the national economy. Tr.26-27. The ALJ found that Plaintiff could perform the representative occupations of Hand Packager (DOT 920.587-018, medium, unskilled (SVP 2)), Cleaner II (DOT 919.687-014), light, unskilled (SVP 1)), and Floor Waxer (DOT 381.687-034 (SVP 2)). Tr. 26-27. The ALJ then found that Plaintiff was not disabled from her alleged onset date of January 3, 2019, through the date of the ALJ's unfavorable decision.

Plaintiff argues the ALJ committed three errors: (1) the ALJ failed to provide clear and convincing reasons to discount Plaintiff's symptom testimony; (2) the ALJ erred by finding the medical opinion of psychiatrist, Dr. Edmond Whiteley unpersuasive; and (3), the ALJ failed to

provide germane reasons for discounting lay witness testimony. For the reasons discussed below, the court reverses and remands.

### I.     Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a Plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is

not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

   A. *Plaintiff's Testimony*

At the hearing, Plaintiff testified about the symptoms he suffers as a result of his mental health impairments. Tr. 397. He described symptoms that oscillate from day to day. On some days, "at least twice a week," he testified to feeling so overwhelmed that he "could not handle the day," and had to go home from work. Tr. 43. On the "bad days," Plaintiff testified he "do[es]n't do anything," and "can't even go grocery shopping." Tr. 45. Plaintiff further described that he does not have social interactions outside his family. Tr. 48. Finally, Plaintiff described his sleep-related symptoms, relating how he "honestly do[es]n't sleep," and how his insomnia causes exhaustion and causes him to miss work. Tr. 44. Ultimately, Plaintiff testified that these symptoms come and go; he confirmed that there are periods of time where he can work full time, and others where his symptoms mean he "can't work at all." Tr. 45.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 24. In discounting the testimony, the ALJ relied on the following rationales: that the medical record conflicts with Plaintiff's testimony, that Plaintiff followed a conservative course of treatment for allegedly disabling symptoms, and that the testimony conflicts with his daily activities. These reasons are not supported by substantial evidence, and the ALJ therefore erred in discounting Plaintiff's symptom testimony.

   B. *Conflict with Objective Medical Evidence*

5 – OPINION AND ORDER

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, available at 2017 WL 5180304, at *7-8. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

In the decision, the ALJ acknowledged that Plaintiff had some symptoms associated with his mental impairments, and provided relevant limitations in Plaintiff's RFC to account for these symptoms. The ALJ further concluded, however, that the symptoms were not as severe as Plaintiff alleged, based on inconsistencies between his testimony and the objective medical evidence in the record. For example, the ALJ noted that at many medical visits Plaintiff demonstrated normal memory and cognition, fair to good insight and judgment, and a generally coherent logical and goal directed thought process, with appropriate thought content. Tr. 25 (citing, inter alia, Tr. 469, 474, 479). The ALJ also cited one of Plaintiff's most recent visits—from June, 2020—where he stated he was overall doing well, and his sleep had also improved. Tr. 1818.

This was not a legally sufficient rationale to reject Plaintiff's reports of his mental health symptoms and limitations. The ALJ must consider Plaintiff's subjective symptom testimony in light of the record as a whole, and may not cherry-pick isolated instances of improvement from the record. *Ghanim*, 763 F.3d at 1164 (noting that "some improved mood and energy level" did not contradict doctors' opinions that Plaintiff could not work where "treatment notes consistently reflect that Ghanim continued to experience severe symptoms, including ongoing depression and auditory hallucinations, difficulty sleeping, nightmares, and memory loss"). This is particularly

6 – OPINION AND ORDER

true of mental health symptoms, which tend to wax and wane over the course of treatment. *Garrison v. Colvin,* 759 F.3d 995, 1036 (9th Cir. 2014) (noting that cycles of improvement followed by worsening symptoms are a common occurrence, not a basis for concluding a claimant is capable of working). Here, the ALJ highlighted that Plaintiff's mental health symptoms appeared under control at certain, discrete appointments, often citing particular notations from the "mental status exam" portion of a visit. Tr. 25 (citing various medical records). A review of the record as a whole, however, shows that Plaintiff's mental health symptoms were uncontrolled at least as often. *Compare* Pl. Br at 10-11 (citing medical records showing worsening mental health symptoms) *with* Tr. 25 (citing sporadic medical records reflecting improvement). The best example of this is the ALJ's reliance on the June, 2020 appointment, which purported to convincingly show Plaintiff's mental health symptoms had improved. Tr. 25. Just a few months later, in September 2020, however, the medical record shows Plaintiff's depression had worsened, and he was struggling at work. Tr. 1826-27. Shortly thereafter, he was terminated for excessive absences. Tr. 43. In sum, when viewed in the context of the entire record, the ALJ improperly cherry-picked cycles of improvement as a reason to reject Plaintiff's subjective symptom testimony about his mental health. This was therefore not a clear and convincing reason for the ALJ to discount Plaintiff's symptom testimony.

    C. *Conservative Treatment*

The ALJ further erred by concluding that Plaintiff's "conservative" treatment undermined his testimony about the severity and frequency of his symptoms. Tr. 25. In some instances, use of conservative treatment such as over-the-counter medication is "sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, the ALJ found Plaintiff's treatment "very conservative" because it

included "largely therapy and prescription medication," Tr. 25. The cases Defendant cites in support of the ALJ's decision, including *Parra*, are limited to pain management and physical symptoms, however, and do not speak to whether Plaintiff's significant cocktail of prescription medication—including Abilify, clonazepam, buspirone, duloxetine, mirtazapine, diazepam, venlafaxine, Zolpidem, quetiapine, and prazosin—and regular therapy are similarly "conservative." Indeed, other district courts to consider whether the combination of prescription medication and therapy are "conservative treatment" of mental health impairments have found they are not. *See, e.g., Merker v. Astrue,* 2011 WL 2039628, at *7 (C.D. Cal. May 25, 2011) ("However, based on Plaintiff's treatment history of having weekly therapy sessions and using medication, the Court cannot conclude that Plaintiff's treatment was conservative when viewed holistically, and on this record."); *Goodwin v. Comm'r of Soc. Sec. Admin.*, 2011 WL 4498962, at *5 (D. Haw. Sept. 26, 2011) (finding lack of inpatient medical care does not render claimaint's mental health treatment "conservative"). Although the ALJ justified his decision to discount Plaintiff's symptom testimony because Plaintiff's "very conservative" treatment included "largely therapy and prescription medication," Tr. 25, this does not fit the Ninth Circuit's mold of "conservative treatment" as a matter of law. It was therefore error for the ALJ to rely on this as a reason to discount Plaintiff' subjective symptom testimony. Plaintiff's purportedly conservative treatment was not a clear and convincing reason, supported by substantial evidence, for discounting his subjective symptom testimony either.

    D.  *Activities of Daily Living*

    Activities of daily living may provide a basis for discounting a claimant's subjective symptoms if those activities contradict testimony of total disability or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *superseded*

*by regulation on other grounds as stated in Schuyler v. Saul*, 813 F. App'x 341, 342 (9th Cir. 2020); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). To do so, an ALJ must cite with specificity "which daily activities conflicted with which part of [Plaintiff's] testimony." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

Here, the ALJ summarily concluded that Plaintiff's "alleged limitations are not fully supported by his reported activities in the medical and other evidence of record." Tr. 25. Although the ALJ claimed Plaintiff's ability to "perform self-care, prepare simple meals, do household chores, and go out to the store" was inconsistent with his allegations, the ALJ failed to explain how any of the cited activities undermined Plaintiff's testimony. Tr. 25. If anything, Plaintiff's testimony addressed his ability to do these activities—but emphasized that he could only do them intermittently, on the "good days." *See, e.g.,* Tr. 45-46. As the ALJ did not explain "*which* daily activities conflicted with *which* part of [Plaintiff's] testimony," he erred. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in original); *see also Lester*, 821 F.3d at 834 (citation omitted) ("General findings [of credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). This was therefore not a clear and convincing reason to discount Plaintiff's symptom testimony either.

### II. Dr. Edmond Whiteley, M.D

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new

regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

      An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3).

      The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

Dr. Edmond Whiteley, M.D., provided psychiatric care to Plaintiff during the period of alleged disability. Starting on January 7, 2019, Dr. Whiteley diagnosed Plaintiff with "recurrent, moderate, Major depressive disorder, PTSD, Generalized anxiety disorder, Insomnia, and Nightmares." Tr. 469. Dr. Whiteley found Plaintiff to have "moderate and severe" depression and "severe" anxiety. Tr. 469. At several subsequent visits that same year, Dr. Whiteley identified these same issues, and found little to no improvement. *See* Tr. 591, 1293, 1402, 1464. At issue here, Dr. Whiteley provided two assessments in response to questions from Plaintiff's attorney. On May 19, 2020, Dr. Whiteley stated that Plaintiff was working full time, planned to continue working full time, and likely would not "pursue disability further." Tr. 1793. Dr. Whiteley next saw Plaintiff in September 2020 . Plaintiff was still working full time, but was "starting to struggle," Plaintiff's mental status exam was again mostly normal with mostly moderate symptoms. Tr. 1827-28. On March 4, 2021, Dr. Whiteley completed another questionnaire and stated that Plaintiff could not work full-time on a sustained basis due to anxiety and depression. Tr. 1845. Dr. Whiteley believed Plaintiff would have marked limitation in his ability to interact appropriately with the general public and supervisors. Tr. 1848. He also assessed several moderate limitations. Tr. 1848.

As discussed above, the ALJ erred by relying on isolated instances of improvement in Plaintiff's treatment history to discount Plaintiff's subjective symptom testimony, and made the same error in finding Dr. Whiteley's medical opinions unpersuasive . The supportability factor looks to the relevant objective medical evidence—that is, clinical signs and diagnostic findings, *see* 20 C.F.R. §§ 404.1502(c), (f), (g)—and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1). "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when

evaluating a medical opinion. *Ford*, 950 F.3d at 1155. The ALJ found Dr. Whiteley's March 4, 2021 opinion that Plaintiff would be unable to work unpersuasive because it directly contradicted his May 19, 2020 opinion that Plaintiff could work full time. *Compare* Tr. 1793 (May 19, 2020) *with* Tr. 1845 (March 4, 2021). The ALJ reasoned that there was nothing in the record that would explain Dr. Whiteley's changed opinion between May 2020, and March 2021. Tr. 25-26. But again, the ALJ skipped over the September, 2020 medical records showing Plaintiff's worsening depression, and Plaintiff's hearing testimony that his diminished mental health prevented him from working. Tr. 43, 1826-27. The ALJ's decision to discredit Dr. Whiteley's opinion is therefore not supported by substantial evidence, and it was error to find Dr. Whiteley's opinion unpersuasive.

### III. Lay Witness Testimony

Plaintiff further argues that the ALJ erred by rejecting the testimony of Plaintiff's wife. Plaintiff's wife completed a third-party Function Report in September 2019, in which she reported that Plaintiff cannot focus for a long period of time, is easily upset by others, and is limited by anxiety and depression which make it difficult for him to even get out of bed many days. *Id.* She explained that Plaintiff requires encouragement to complete household chores. Tr. 299. He is limited in his ability to shop. Tr. 300. He is not comfortable attending family events and has to leave early or become overwhelmed. Tr. 301. Due to his lack of focus, he cannot remember what he is doing or thinking about. Tr. 302. He handles stress and changes in routine "very badly." Tr. 302. He spends days crying and out of control of his emotions. Tr. 304.

Plaintiff argues that the ALJ erred by discounting lay witness testimony for the same erroneous reasons cited for discounting Plaintiff's own symptom testimony. Pl. Br. at 16. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is

competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). The ALJ noted the lay witness testimony was "similar to the claimant's own subjective complaints of disabling social limitations," which the ALJ found inconsistent with "activities of daily living including her admitted ability to take her kids to and from school, shop in stores, socialize with neighbors, and keep herself busy in general." Tr. 26. As discussed above, the ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective complaints. The ALJ therefore erred by rejecting the lay witness statement for these same reasons.

**IV. Remedy**

As the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

13 – OPINION AND ORDER

If Plaintiff's subjective symptom testimony were credited as true, the ALJ would be required to find Plaintiff disabled. Plaintiff testified that at least twice a week," he felt so overwhelmed that he "could not handle the day," and had to go home from work. Tr. 43. On these "bad days," Plaintiff testified he "do[es]n't do anything," and "can't even go grocery shopping." Tr. 45. Although Plaintiff testified that his mental health symptoms come and go, he shared that there are times when his symptoms mean he "can't work at all." Tr. 45. The vocational expert testified that an employee who missed more than two days of work a month would be unable to maintain employment. Tr. 51.

Defendant argues that remand is appropriate because, under the "ordinary remand rule," harmful errors should generally trigger remand for further proceedings. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Because the ALJ's errors involved conclusions that "testimony…w[as] inconsistent with the record," Defendant argues "[s]uch inconsistencies would be 'exactly the sort of issues that should be remanded to the agency for further proceedings.'" ECF 14 at 11 (citing *Brown-Hunter v. Colvin*, 798 F.3d 749, 757 (9th Cir. 2015). Defendant's summary citation to these two cases does not meaningfully engage with the credit-as-true standard, however, and does not persuade this Court that further proceedings are appropriate. As indicated above, under the Ninth Circuit's credit-as-true standard, if Plaintiff's testimony about how often his mental health symptoms cause him to miss work is true, the ALJ would be required to find him disabled. This is therefore the rare instance where remand for an award of benefits is appropriate. Plaintiff satisfies all three requirements under *Garrison*, and the Court sees no purpose for further proceedings.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED and this case is remanded for award of benefits.

IT IS SO ORDERED.

DATED this 29th day of June, 2023.

                                                            _____/s/ Michael J. McShane_____
                                                                  Michael McShane
                                               United States District Judge